UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PEYMAN HAGHNEJAD,

    Petitioner,

v.        Case No. 3:26-cv-1-MMH-PDB

SHERIFF SCOTTY RHODEN, et al.,

    Respondents.
_____

## ORDER

### I. Status

Petitioner Peyman Haghnejad, an immigration detainee, filed through counsel a Petition for Writ of Habeas Corpus and Request for Emergency Injunctive Relief (Doc. 1; Petition) on January 2, 2026. Haghnejad is currently in the custody of U.S. Immigration and Customs Enforcement (ICE) at the Baker County Jail. Respondents filed a Response (Doc. 7; Response), and Haghnejad filed a counseled Reply (Doc. 8; Reply). This case is ripe for review.

### II. Petition

Haghnejad "is a native and citizen of Iran" who entered the United States on November 10, 1999, after obtaining a visitor's visa. Petition at 4, ¶¶ 11-12. Haghnejad acknowledges that he "overstayed the time allowed by the visa," and in February 2000, he was placed in removal proceedings. Id. ¶ 13.

Subsequently, on May 18, 2001, an immigration judge entered an order of removal against Haghnejad and further denied his application for asylum and withholding of removal. Id. ¶ 14. Haghnejad appealed, and the Board of Immigration Appeals (BIA) dismissed his appeal on May 6, 2002. Id. ¶¶ 15-16.

In 2009, the State of Florida charged Haghnejad with one count of simple battery, to which he entered a "no contest" plea. Id. at 5, ¶ 17. Although the state court withheld adjudication of guilt, this "disposition is a 'convict[ion]' for the purposes of U.S. immigration law." Id. ¶ 18. Thus, "[o]n April 20, 2009, the Attorney General issued a 'Warrant of Removal/Deportation,' commanding []ICE officers to take [Haghnejad] into custody for removal from the United States." Id. ¶ 19. On about July 20, 2009, following Iran's refusal to accept Haghnejad, ICE released him on an order of supervision. Id. at 6, ¶ 21.

On April 15, 2025, Haghnejad filed with the BIA a motion to reopen his removal proceedings, but the BIA denied the motion and Haghnejad's subsequent request for reconsideration. Id. ¶¶ 24, 26-27. Haghnejad filed another motion for reconsideration on December 22, 2025, which remains pending. Id. ¶ 28.

In the meantime, on June 23, 2025, Haghnejad reported to an ICE office and ICE took him into custody. Id. ¶ 25. At the time he filed the Petition, Haghnejad had been in ICE custody for 193 days. Id. at 10, ¶ 53. Among other claims, Haghnejad contends that he is entitled to immediate release under

2

Zadvydas v. Davis, 533 U.S. 678 (2001), and the Fifth Amendment, because his post-removal order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future. Id. at 9-11, ¶¶ 45-60. He contends that immigration officials advised him "they have not been successful in securing his return to Iran," which remains "a recalcitrant country as recognized by the U.S. Government." Id. at 10-11, ¶¶ 55, 60.

### III.  Analysis

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. See Johnson v. Guzman Chavez, 594 U.S. 523, 543-44 (2021) ("And § 1231 explains what to do if the alien is ordered removed."); see also Deshati v. Noem, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)[1] ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2).

---

[1] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

Nevertheless, in Zadvydas, 533 U.S. at 690, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, ICE should make every effort to remove the alien within a reasonable time. Id. at 701. The government may detain an alien beyond the statutory removal period if he is, among other things, a criminal alien or the Attorney General has determined the alien is a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). The Supreme Court in Zadvydas held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" the burden then shifts to the government to provide evidence sufficient to rebut that showing. Id. at 1052 (quoting Zadvydas, 533 U.S. at 701). Thus, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. If an alien makes these showings, then the burden shifts to the government to

rebut the presumption with sufficient evidence establishing that there is a significant likelihood of removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

Here, Haghnejad was taken into ICE custody on June 23, 2025, and he filed this case 193 days later on January 2, 2026. Respondents concede that Haghnejad had been in ICE custody longer than 180 days when he filed this case. Response at 4. Thus, the Court must consider whether Haghnejad has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale, 287 F.3d at 1052. In the Petition, Haghnejad asserts that in 2009, ICE released him on an order of supervision because Iran refused to accept him. Petition at 6, ¶ 21. And for the almost sixteen years that followed, ICE apparently took no action to attempt to remove Haghnejad. Now, he has been detained for more than six months, and ICE still has been unable to remove him.

Given the record, the Court finds that Haghnejad has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Haghnejad's] showing." Akinwale, 287 F.3d at 1052. As explained below, Respondents fail to do so.

Respondents submit the Declaration of Deportation Officer Christopher Fernandez (Doc. 7-1) to support their position "that there is a significant

5

likelihood that [Haghnejad] will be removed in the reasonably foreseeable future." Response at 4. Officer Fernandez contends, in relevant part, that after Haghnejad was first ordered removed, on April 21, 2009, Enforcement and Removal Operations (ERO) requested that Iran issue travel documents for Haghnejad, but Iran declined to do so on May 8, 2009. Id. at 2, ¶ 8. More than sixteen years after Iran's initial denial, on June 23, 2025, Haghnejad was re-detained "to effectuate the final order of removal." Id. ¶ 11. However, no action was taken for over six months until "ERO submitted a request for an electronic travel document [] to Headquarters [] Removal and International Operations [] for evaluation by the Detention and Deportation Officer [] responsible for Iran" on December 31, 2025. Id. ¶ 12. On February 4, 2026, ERO requested a status update and was advised that the travel document request was still pending. Id. ¶ 13. Headquarters "is also continuing to explore third-country removal options," and on February 4, 2026, "ERO made a formal request for travel documents from a third-country being considered for removal." Id. ¶¶ 14-15. Based on these facts, Officer Fernandez concludes that "there is a significant likelihood that [Haghnejad] will be removed in the reasonably foreseeable future." Id. ¶ 16.

Respondents' conclusion that "there is a significant likelihood that [Haghnejad] will be removed in the reasonably foreseeable future," Response at 4, finds no basis for support on the record before the Court. Iran previously

6

declined to issue travel documents for Haghnejad, and Respondents provide no evidence that circumstances have changed such that Iran would render a different decision now. Additionally, they fail to provide any information regarding their "explor[ation]" of third-country removal, such as details relating to their plan for third-country removal or identification of any country they have contacted or plan to contact to determine whether such country will accept Haghnejad. Iran initially advised that it would not accept Haghnejad in May 2009, yet no attempt was made to initiate third-country removal proceedings at that time or for the approximate sixteen years thereafter. Respondents have failed to show that they are any closer to deporting Haghnejad today than they were at the time of his re-detention on June 23, 2025. See Zadvydas, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrinks.").

Based on the evidence presented, the Court finds Respondents have failed to show a significant likelihood that Haghnejad will be removed in the reasonably foreseeable future. Therefore, Haghnejad is entitled to release from detention under Zadvydas.

Because the Court grants relief on Haghnejad's Zadvydas claim, which is truly the heart of this case, see Reply at 1-3, the Court need not address his other claims. See Banks v. Dretke, 540 U.S. 668, 689 n.10 (2004) (declining to

7

address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative"); see, e.g., Pena-Gil v. Lyons, No. 25-CV-03268-PAB-NRN, 2025 WL 3268333, at *4 (D. Colo. Nov. 24, 2025) ("Because the Court will grant petitioner's petition on the basis of his Zadvydas claims, . . . it need not reach petitioner's remaining claims that contest petitioner's detention.").[2]

Accordingly, it is

**ORDERED**:

1.   Haghnejad's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** on his Zadvydas claim. Respondents shall release Haghnejad **within 24 hours** of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

---

[2] Insofar as Haghnejad requests attorney's fees, he may make such a request in a separate motion, if appropriate. See Local Rule 7.01, United States District Court, Middle District of Florida. Any such motion must be supported by a memorandum of law.

    2.    The **Clerk of Court** is directed to enter judgment granting the Petition on the Zadvydas claim, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 23rd day of February, 2026.

*[Signature]*
MARCIA MORALES HOWARD
United States District Judge

JAX-3 2/23
c:
Counsel of Record